IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

CHARLES SAMUEL JOHNSON JR.                                        PLAINTIFF

v.                              Civil No. 4:19-cv-04109

GUARD BURNS, Miller County Detention Center
("MCDC"); CAPTAIN ADAMS, MCDC; and
 K. WATSON, Disciplinary Committee MCDC                           DEFENDANTS

## REPORT AND RECOMMENDATION

This is a civil rights action filed *pro* se by Plaintiff, Charles Samuel Johnson Jr., under 42

U.S.C. § 1983.  Before the Court is a Motion for Summary Judgment filed by Defendants.  (ECF

No. 22).  Plaintiff has filed a Response.  (ECF No. 26).  Pursuant to the provisions of 28 U.S.C. §

636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, Chief United States District Judge,

referred this case to the undersigned for the purpose of making a Report and Recommendation.

### I. BACKROUND

Plaintiff is currently incarcerated in the Arkansas Department of Correction – East

Arkansas Regional Unit.  His claims in this action arise from alleged incidents that occurred in

August of 2019 while he was incarcerated in the Miller County Detention Center ("MCDC")

serving a sentence for a parole violation.  (ECF No. 1, p. 3).  Viewed in the light most favorable

to Plaintiff, the relevant facts are as follows.

Plaintiff was booked into the custody of the MCDC on August 2, 2019.  (ECF No. 24-2, p.

1).  On August 9, 2019, Defendant Kam Burns submitted a report regarding an incident involving

Plaintiff which states in relevant part:

> On date and time above inmate Johnson was told a few times to get out the window
> and to stop banging on the door.  As I was going to the front, as I reached max Hall
> 2 door, Johnson starts banging on the door after already being told a few times to

> stop, he banks again asking for a channel check.  I, officer Burns, told him wait I'm
> busy and he says 'man come on I know you got it stop playing with me.'  As I was
> conducting the move sheet moving an inmate in Max B inmate Johnson was sitting
> at a day room table with his feet propped up on a spot on a different table.  As I
> tried to walk to through Johnson refused to move his leg and as I walked around he
> then stated to me, 'Bitch ass nigga" as I walked to him, I asked what he say, he then
> stated that I better get back and refused to rolled his things up until I was going to
> restrain him and he stated several times don't touch him and he'll roll up'

(ECF No. 24-4, p. 1).

On August 14, 2019, Plaintiff appeared before the Disciplinary Committee.  He presented

the following statement: "I was talking to another inmate, NOT to him.  He was standing over me

so yeah he heard what I said.  But I still wasn't talking to him, I am entitled to my own opinion!

It's my freedom of speech, you can't punish me for my freedom of speech!  Man whatever I will

just have to file me ANOTHER law suit."  (ECF No. 24-4, p. 3).  The Disciplinary Committee

determined Plaintiff had committed the infraction.  The report stated in part, "After hearing this

Inmates statement, Capt. Adams decided that this inmate is GUILTY and the sanction is for 60

days.  The findings were explained in detail to this inmate but he didn't agree with it, so he stated

that he would file a law suit.  At that point the hearing was complete."  (ECF No. 24-4, pp. 1-7).

On August 15, 2019, Plaintiff submitted an inmate grievance, stating:

> I'm on lockdown because I was talking to another inmate about a guard.  This is
> AMERICA an I have a right to freedom of speech which means I can talk about
> who ever I want to.  I never once talked directly to this guard so how can I get
> locked down for insolence to staff if I'm not talking to him this disciplinary is
> flivarious an a violation of my constitutional rights so I asked that this disciplinary
> be reversed.  (Thank You)

(ECF No. 24-3, p. 1).  In response, Admin G. Officer stated, "the Disciplinary committee will

review you request.  We will consider your request upon completion of that review.  We will take

into consideration the nature of your misconduct when determining whether a reduction

warranted."  Capt. G. Adams confirmed."  *Id.*

On August 24, 2019, Plaintiff submitted an inmate grievance, stating:

On 8/9/2019 I was in Max-A speaking with another inmate about Officer Burns turning off the T.V. Officer Burns then comes over to me towers over me in a threatening manner while I'm sitting down an in a threatening manner says to WHAT YOU SAY.  I then tell him I wasn't talking to him an can he not stand over me like that posting a threat.  THIS IS AMERICA I HAVE THE RIGHT TO TALK TO ANYBODY ABOUT ANYBODY I WANT IT'S CALLED FREEDOM OF SPEECH.  Officer Burns violated the right of mine.

(ECF No. 24-3, p. 2).  In response, Admin G. Officer replied, "Please keep in mind, television viewing is a privilege and may be restricted due to misconduct, or to meet the needs of the facility."  *Id.*  On October 14, 2019, Plaintiff was released to the custody of Arkansas Parole.  (ECF No. 24-2, p. 1).

The MCDC has policies and procedures in place to ensure proper conduct among its personnel and members and to protect and promote the safety and constitutional rights of inmates.  (ECF No. 24-5, pp. 1-36).  Through the implementation of these policies and procedures the MCDC seeks to obtain a balance between the expression of individual rights and the preservation of facility order and security.  *Id.* at p. 30.

It is the policy of the MCDC that proper order and security be maintained in the facility, and approved disciplinary procedures be followed when inmates attempt to disrupt order and security.  (ECF No. 24-5, pp. 4-11).  At the discretion of the shift supervisor or higher authority, an inmate accused of violating MCDC rules may be placed in Administrative Segregation for the purpose of maintaining facility security and order.  *Id.* at p. 7.  An inmate who is charged with a rule violation shall receive a written statement of the charges, including a description of the incident and specific rules violated, at least 24 hours in advance of the Disciplinary Hearing.  *Id.*

3

The Disciplinary Hearing should be scheduled within (7) working days of the incident. *Id.* at p. 8.

A written record of Disciplinary Hearings (Inmate Disciplinary Hearing Log) and Appeals shall be made and maintained in accordance with the MCDC's retention schedule. (ECF No. 24-5, p. 9). The Disciplinary Committee's decision regarding an inmate's violation of MCDC rules shall be based solely on information obtained in the hearing process, including staff reports, the statements of the inmate accused, the evidence derived from witnesses, photographs, videos and documents. A written record of the decision shall be made, containing supporting reasons, and a copy shall be given to the inmate. *Id.*

The MCDC maintains a list of prohibited acts, their corresponding disciplinary actions, and the method for establishment and loss of inmate privileges. A list of inmate rules, regulations and sanctions is posted in each housing area of the MCDC. (ECF No. 24-5, p. 28). The prohibited acts relevant to the instant lawsuit and summary judgment motion include but are not limited to the following: 1) disobeying verbal or written order – any order given to an inmate or inmates by a staff member or other authorized person; 2) disobeying institutional regulations; and 3) obscene or profane act, gesture, or statement - oral, written or signified. *Id.* at pp. 241, 243, 244).

Plaintiff filed his Complaint on September 5, 2019, naming Guard [Kam] Burns, Captain Adams, and K. Watson as Defendants. (ECF No. 1). He describes his claims against Defendants as "Violation of Freedom of Speech, Inciting Violence, Abuse of Power, Intimadating". *Id.* at p. 4. Specifically, Plaintiff states:

> On 8/9/19 I was sitting at a table talking to another Inmate…telling him that Guard Burns is a Bitch Ass Nigga for not giving us the remote & turning off the T.V. when all of a sudden Guard Burns comes over & stands over me in a threathing manner & says to me what did you just say I then inform him that I'm not talking to him…He continues to standing there for 15 to 20 more seconds in this threathing manner, then he proceeds to leave the barracks but fefore he does he looks back & tell me to get my property ready I'm going to the Hole In which I then state for

4

what & he never answers.  About 5 minutes later Gaurd Burns comes back & places me in the hole.  He gave me a Disciplinary for this matter.  For Insolence to staff.

On 8/14/19 I went to Disciplinary court (Capt. Adams & K. Watson being the Disciplinary Committee) I explained to…I was speaking to another inmate not Guard Burns when Capt. Adams then tells me that I can't speak or talk to another inmate about a Guard, then K. Watson says to me what if two inmates where talking about you & you heard them I then inform K. Watson that that is those two inmate opinion & also right to freedom of speech.  Upon completion of the hearing Capt. Adams & K. Watson find me guilty & sentence me to 60 days segregation, 60 days commissary loss & 60 days kiosk.  Before I leave the room I inform the Disciplinary Committee that hey just violated my right to freedom of speech & I would be filing a lawsuit at this poin Capt. Adams gets angry & says oh your going to file a lawsuit get him outta here he states to the Guard escorting me before I leave I tell him he's still mad over the last lawsuit I filed on him (Capt. Adams) & he then states in a angry tone oh the lawsuit that you filed that I never got repremanded behind or anything, oh that lawsuit.  I also informed the Disciplinary Committee that I would have to be talking insolent to staff to be charged with such.

(ECF No. 1, pp. 4-6).

Plaintiff also sues Defendants in their official capacity.  He describes this claim as "my right to speak freely amongst fellow inmates while on Recreation.  My right to not be threathend, intimidated or incited by violence from a staff member."  (ECF No. 1, p. 7).  He seeks compensatory and punitive damages.  *Id.* at p. 8.

On May 4, 2020, Defendants filed the instant motion arguing they are entitled to summary judgment because: 1) Defendants did not retaliate against Plaintiff for exercising his constitutional right of free speech by discipling him; 2) verbal threats or intimidation by Defendant Burns is not actionable under § 1983; 3) Defendants did not deny Plaintiff due process of law; 4) Defendants are entitled to qualified immunity; and 4) there is no basis for official capacity liability.  (ECF No. 22).

On May 20, 2020, Plaintiff filed a Response and Statement of Facts in opposition to Defendants' summary judgment motion.  (ECF Nos. 26, 27).  In addition to reiterating the claims

from his Complaint, Plaintiff states Defendants failed to turn over video of the August 9, 2019 incident with Defendant Burns because they informed him the video "does not exist". (ECF No. 26, p. 2). Plaintiff appears to argue for the first time that failure to preserve the video violates the policy of the MCDC to preserve video footage involving the "possibility of encountering resistance from an inmate…". (ECF No. 26, p. 3).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. DISCUSSION

### A.  Video Footage

As an initial matter, Plaintiff states in his Response to Defendants' summary judgment motion he "asked Defendants several times for a copy of the video footage of the 8/9/19 incident, but was told 'The video…does not exist and, therefore, cannot be produced'".  (ECF No. 26, p. 2). This claim is not properly before the Court for decision.  On February 26, 2020, the Court denied Plaintiff's Motion to Compel production of the video footage (ECF No. 16) because Defendants informed Plaintiff the video footage did not exist and "Defendants cannot produce what they do not have in their possession or control.  Fed. R. Civ. P. 34 (a)(1)."  (ECF No. 19).  Accordingly, I recommend the Court not address Plaintiff's claim regarding the failure to produce video footage.

### B.  Retaliation for Exercising Free Speech

Plaintiff claims the disciplinary action he received for "insolence to staff" was a violation of his right to free speech, as he was not speaking negatively toward Defendant Burns himself but was speaking negatively about Defendant Burns to another inmate.  The Court interprets Plaintiff's claim as one for retaliation for exercising what Plaintiff believes to be his right to free speech.

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States.  To state a claim under 42 U.S.C. § 1983, Plaintiff must allege Defendants acted under color of state law and they violated a right secured by the Constitution.  *West v. Atkins,* 487 U.S. 42 (1988); *Dunham v. Wadley,* 195 F.3d 1007, 1009 (8th Cir. 1999).  The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983.  *Daniels v. Williams,* 474 U.S. 327 (1986).

Generally, "[c]onduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason." *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001) (citing *Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir. 1990)). The retaliatory conduct itself need not be a constitutional violation to be actionable. Additionally, there is no independent injury requirement when retaliatory conduct is involved. *See Dixon v. Brown*, 38 F.3d 379, 380 (8th Cir. 1994). To prevail on his retaliation claim, Plaintiff must demonstrate: (1) he engaged in protected activity; (2) Defendants responded with adverse action that would "'chill a person of ordinary firmness' from continuing in the activity;" and (3) the adverse action was motivated at least in part by exercise of the protected action. *See L.L. Nelson Enterprise Inc. v. County of St. Louis, Mo.,* 673 F.3d 799, 807-8 (8th Cir. 2012) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)).

Although the First Amendment provides for free speech, "the fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment, which are implicit in incarceration." *Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 125 (1977). "A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the correction's system." *Id.* (quoting *Pell v. Procunier,* 417 U.S. 817 (1974).

In *Goff v. Dailey,* 991 F.2d 1437, 1439 (8th Cir. 1993), the Court held discipline of an inmate based on crude language spoken to other inmates about a guard did not violate First Amendment free speech rights. The Court determined the prison had a legitimate penological interest in punishing inmates for mocking and challenging correctional officers by making crude personal statements about them in a recreation room full of other inmates. The Court ruled Goff

was not deprived of his First Amendment rights when the disciplinary committee found he violated the rule against verbal abuse.  *Id.*

As in *Goff,* the Court finds Plaintiff did not engage in activity protected by the First Amendment when he told another inmate in front of Defendant Burns that Defendant Burns was a "bitch ass nigga" for not giving Plaintiff the remote control and turning off the television. Certainly, Plaintiff's statement about Defendant Burns is not only derogatory but offensive and disrespectful.  Such language could incite other inmates and endanger the safety of MCDC officers.  Plaintiff was aware of the rules of the MCDC which prohibit any "disrespect to officials, employees, or other persons of constituted authority expressed by means of words, gestures, and the like" and "obscene or profane act[s], gesture[s], or statement[s] – oral, written or signified". (ECF No. 24-5, pp. 17, 20). Therefore, the disciplinary action Plaintiff received was reasonably related to legitimate penological interests separate and apart from any purpose to retaliate.  *Turner v. Safley,* 482 U.S. 78, 89 (1987) (applying standard to prisoners' free speech and association claims).

Accordingly, I recommend Defendants be granted summary judgment on Plaintiff's claim of retaliation for violating his First Amendment right to free speech.

### C.  Verbal Threats

Plaintiff alleges Defendant Burns violated his constitutional rights on August 9, 2019, when he "come over & stands over me in a threathing manner & says to me what did you just say…comes back & places me in the hole…"  (ECF No. 1, pp. 4-5).

It is well established that "Verbal threats do not constitute a constitutional violation." *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985).  Similarly, taunts, name calling, and the use of offensive language does not state a claim of constitutional dimension.  *McDowell v. Jones*,

990 F.2d 433, 434 (8th Cir. 1993) (inmate's claims of general harassment and of verbal harassment were not actionable under § 1983); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987) (verbal threats and abuse by jail official did not rise to the level of a constitutional violation).

Accordingly, I recommend Defendants be granted summary judgment on Plaintiff's claim relating to intimidation by Defendant Burns.

**D.  Due Process**

Plaintiff alleges he was denied due process when Defendants gave him a disciplinary for speaking rudely about Defendant Burns.

To prevail on a due process claim, Plaintiff must first demonstrate he was deprived of life, liberty, or property by government action. *Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003). As noted by the Supreme Court in *Sandin v. Conner*, 515 U.S. 472 (1995), although convicted prisoners do not shed all constitutional rights at the prison gate, lawful incarceration brings about the necessary limitation of many privileges and rights justified by the consideration underlying our penal system. Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law. *Id.* at 485. " To prevail on such a claim based on prison housing, an inmate must show that the segregation created an ' atypical and significant hardship on him in relation to the ordinary incidents of prison life' to demonstrate that his liberty interest was curtailed." *Rahman X v. Morgan*, 300 F.3d 970, 973 (8th Cir. 2002) (alteration omitted) (quoting *Sandin*, 515 U.S. at 484).

When deciding whether an individual was afforded procedural due process a court employs a two-step analysis. *See Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454 (1989). First the court must determine whether the individual holds a protected liberty or property interest. *Id.* If the court finds a protected interest, the question becomes whether the state provided sufficient

due process prior to depriving that individual of the protected interest. *Id.* Here, Defendants do not dispute Plaintiff had a protected liberty interest. Instead, they argue Plaintiff was provided with due process of law in connection with the disciplinary segregation he received because of violating the MCDC's rules.

Once an inmate has shown he has a viable liberty interest, correctional facilities must follow certain procedures to conduct an impartial due process hearing on a disciplinary matter. *Wolff v. McDonnell*, 418 U.S. 539 (1974)). These procedures include written notice of the charges, a brief period to prepare, a written statement of the evidence relied on and reasons for the disciplinary action, and the ability for the inmate to call witnesses and present documentary evidence. *Id.; see also Dible v. Scholl*, 506 F.3d 1106, 1110 (8th Cir. 2007).

Here, Plaintiff has not alleged that the segregation created an atypical and significant hardship on him in relation to the ordinary incidents of prison life to demonstrate that his liberty interest was curtailed. He simply disagrees with the decision of the Disciplinary Committee to sanction him for violation of the MCDC's rules. Plaintiff was placed in segregation by Defendant Burns on August 9, 2019 for "insolence to staff" after he used disrespectful and offensive language describing Defendant Burns to another inmate. Plaintiff was provided with notice of the allegations against him and he was given an opportunity to give a statement at his disciplinary hearing held on August 14, 2019. Defendant Adams and Watson then found Plaintiff guilty of insolence to staff, and sentenced him to 60 days segregation, 60 days commissary loss, and 60 days kiosk loss.

In this case, Plaintiff was given sufficient notice of his upcoming hearing, an opportunity call witnesses (which he declined), and an opportunity to provide a statement (which he did).

Accordingly, I recommend Defendants be granted summary judgment on Plaintiff's due process claims.

### E.  Official Capacity Claims

Plaintiff also sued Defendants in their official capacity.  Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010).   In this case, Plaintiff's official capacity claims against Defendants are treated as claims against Miller County.  *See Murray v. Lene,* 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013).  To establish Miller County's liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted).  To establish the existence of an unconstitutional policy, the Plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whiteledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

Here, Plaintiff has failed to produce any summary judgment evidence of a policy or custom of Miller County that contributed to the alleged violation of Plaintiff's constitutional rights. Accordingly, Plaintiff's claims against Defendants in their official capacity fail as a matter of law.[1]

---

[1] Because there was no violation of Plaintiff's constitutional rights, it is unnecessary for the Court to address the issue of qualified immunity.

**IV. CONCLUSION**

For the reasons stated above, I recommend Defendants Guard Burns, Captain Adams, and K. Watson's Motion for Summary Judgment (ECF No. 22) be **GRANTED** and all individual and official capacity claims against them be **DISMISSED WITH PREJUDICE.**

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 9th day of June 2020.**

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE